UNITED STATES DISTRICT COURT

DISTRICT OF MAINE

| | |
|---|---|
| UNITED STATES OF AMERICA, )<br>)<br>)<br>v. )<br>)<br>KENNETH LEON MEADER, )<br>)<br>Defendant ) | Crim. Nos. 1:95-cr-25-DBH<br>and 1:98-cr-42-DBH-02 |

### DECISION AND ORDER ON MOTION
### FOR COMPASSIONATE RELEASE

In 1996, I sentenced Kenneth Leon Meader to 35 years in prison. Judgment, No. 1:95-cr-25-DBH (ECF No. 79). In 2000, the late Judge Brody sentenced him to 56 months consecutive to my 35-year sentence for conspiring to escape after I sentenced him. Am. Judgment, No. 1:98-cr-42-DBH-2 (ECF No. 37). Meader's projected release date now is February 2, 2029. He is 71 and suffers from several serious medical conditions. On November 17, 2020, I denied his motion for compassionate release. Order, No. 1:98-cr-42-DBH-2 (ECF No. 44). Meader appealed my decision, then moved to voluntarily dismiss his appeal, which the First Circuit allowed. Judgment, Nos. 20-2137, 20-2147 (1st Cir. Jan. 21, 2021). Now Meader has renewed his request for compassionate release in this Court, seeking to have his consecutive sentences reduced to time served.[1]

---

[1] In addition to the motion papers filed by Meader and the government, I have received and read two letters from a friend in Louisiana, one of them offering to let Meader stay with her, No. 1:98-cr-42-DBH-2 (ECF Nos. 49, 54), a letter from Meader himself (ECF No. 53), a letter from Meader's

I address first a statement in Meader's latest motion that I interpret as a motion for recusal: "Due to extensive history of disputes in this case, a deep seated antagonism may exist by the sentencing judge in this case towards the Defendant requiring recusal."  No. 1:98-cr-42-DBH-2, Def.'s Mot. at 4 (ECF No. 48).  I presided at the jury trial and was the sentencing judge in Docket No. 1:95-cr-25-DBH.  The late Judge Morton Brody was the sentencing judge in Docket No. 1:98-cr-42-DBH-2, and I had no involvement in that case.  I have no antagonism toward Mr. Meader.  I do have knowledge of him and his underlying criminal conduct as of 1995 resulting from my involvement those many years ago, but that is not a ground for recusal.[2]  See Liteky v. United States, 510 U.S. 540, 550-51 (1994) (stating that "opinions held by judges as a result of what they learned in earlier proceedings" are "not subject to deprecatory characterization as ''bias' or 'prejudice'").  Treating the statement as a motion for recusal, I **DENY** the motion.

On the merits of his request for compassionate release, Meader says that the COVID-19 outbreak where he is housed at FCI Butner Medium II has greatly worsened since my November ruling, Def.'s Mot. at 1,[3] and that his cancer has

---

sister offering to let him stay with her in Connecticut (ECF No. 57), Meader's statement saying that he would live with his sister in Connecticut or his friend in Louisiana (ECF No. 56), and a letter from an "old friend" challenging one of the crimes in Meader's criminal history involving the friend's daughter (ECF No. 58).  It was a statutory rape charge involving a 13-year-old and the friend says now that he knows Meader did not rape his daughter, although at the time he believed he did.  The First Circuit approved my treatment of statutory rape (which includes consensual intercourse and sexual touching when the victim is 13) at sentencing in United States v. Meader, 118 F.3d 876, 881-85 (1st Cir. 1997).

[2] I also denied a motion to reduce sentence in 2015, because a change in the Guidelines was inapplicable to Meader's sentence.  No. 1:95-cr-25-DBH (ECF No. 95).

[3] The BOP reports that FCI Butner Medium II currently has 61 inmates and 4 staff positive for COVID-19 and 334 inmates and 18 staff who have recovered.  See BOP, COVID-19 Cases, Federal Bureau of Prisons (last updated Feb. 16, 2021), https://www.bop.gov/coronavirus/.

2

worsened and is not being properly treated, id. at 2.[4]

I noted Meader's serious medical conditions in my earlier Order, stating that he was diagnosed with liver cancer in 2008, prostate cancer less than a year later, and then skin cancer more recently in 2018. Order at 3 n.4. I said that he

> has liver disease, hepatitis C, suffers from intestinal bleeding, an enlarged spleen, aggressive periodontitis, glaucoma, and requires the use of a hearing aid. Meader was the recent victim of an assault by two other inmates in which he suffered fractures to his face and bruising on his ribs. The BOP classifies him as requiring Care Level 3, the most serious short of being in a medical facility.

Id. at 3 (cleaned up). I also said:

> If the seriousness of Meader's medical conditions and his susceptibility to infection were the end of the matter, they—combined with the pandemic's spread—would satisfy the standard of "extraordinary and compelling reasons" . . . . Meader has recently had skin cancer, and the CDC advises that cancer puts people "at increased risk" of suffering severe illness from the coronavirus. Meader also has cirrhosis in the part of his liver that remains after his liver cancer surgery, a condition for which he "might be at an increased risk" of suffering severe illness.

Id. at 3-4 (footnote omitted).

But medical condition and the pandemic are *not* the end of the matter. Congress instructs federal judges to address the factors of 18 U.S.C. § 3553(a) as well. See id. § 3582(c)(1)(A). In my November Order, I addressed the factors

---

[4] BOP records show that a doctor recommended a bone scan and a prostate biopsy on account of elevated PSA levels. Updated Medical Records at 5, 1:98-cr-42-DBH-2 (ECF No. 52-1). The bone scan, which the doctor wanted before the biopsy, was "reassuring," id at 1; the biopsy has not yet been conducted. To the extent Meader believes he has an Eighth Amendment claim for deliberate indifference to serious medical needs, see Def.'s Reply at 1-2 (ECF No. 55), this is not the vehicle nor the court for such a claim; such a claim belongs in the District where he is in custody.

of protecting the public from further crimes, the nature and circumstances of the offense, the history and characteristics of the defendant, and the need to reflect the seriousness of the offense, promote respect for the law, provide just punishment and afford adequate deterrence. Order at 4-6. I need not recount all of what I said there. It was on account of those factors that I originally denied Meader's motion for compassionate release despite his serious medical conditions.

Notwithstanding the current COVID-19 conditions and Meader's cancer condition, my assessment of those factors has not changed. Meader and his friends and family members who have written me all are confident that Meader's religious faith has made him a changed man, that he is no longer a danger to society, that conditions of supervised release can guarantee it, and that he is willing to live a great distance (Connecticut or Louisiana) from the victim of his crime. Notice of Alternate Release Plans at 1-3, 1:98-cr-42-DBH-2 (ECF No. 56).

I have no crystal ball. I repeat what I said in November: "Perhaps he has changed; redemption should never be considered impossible. Nevertheless, I simply cannot determine with confidence one way or the other whether now, 24 years after I sentenced him, Meader remains a danger to the public." Order at 5. I went on to say: "Given what I have recounted, reducing Meader's sentences now, even though he is old and sick, would diminish each of these punishment values—that the penalty 'reflect the seriousness of the offense, . . . promote respect for the law, . . . provide just punishment . . . [, and] afford adequate deterrence.' 18 U.S.C. § 3553(a)(2)."

For those same reasons, I once again **DENY** Meader's motion for compassionate release.

**SO ORDERED.**

**DATED THIS 17TH DAY OF FEBRUARY, 2021**

/s/ D. BROCK HORNBY
**D. BROCK HORNBY**
**UNITED STATES DISTRICT JUDGE**